No. 2444

Second Circuit

J. E. DAVIS, ET AL. v. LOUISELL PINE & HARDWOOD CO., ET AL.

(December 10, 1925, Opinion and Decree.).

(*Syllabus by the Editor.*)

1.  **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial judge as to the fact that the fire was caused by sparks from defendants' engine and that it was due to negligence of the defendants, being eminently correct is affirmed.

(Civil Code Art. 2315. Editor's note.)

2.  **Louisiana Digest—Damages—Par. 106.**

The quantum of damages due to a fire caused destruction of property valued at $300.00 by the district judge, being eminently correct, is affirmed.

Appeal from Third Judicial District Court of Louisiana, Parish of Union, Hon. S. D. Pearce, Judge.

This is a suit for damages caused by a fire alleged to have been started by sparks from defendants' locomotive. Judgment for plaintiff and defendant appealed.

Judgment affirmed.

Elder, Thompson & Digby, of Ruston, attorneys for plaintiffs, appellees.

H. G. Fields, of Farmerville, attorney for defendant, appellant.

CARVER, J.    Defendant, Louisell Pine & Hardwood Company, appeals from a judgment condemning it to pay plaintiffs $300.00 for damages caused by a fire on or about July 21, 1924, alleged to have been started by sparks from the locomotive of defendant's log train.

On the question whether the fire did so originate and also whether this was due to defendant's negligence, the testimony is conflicting.

Plaintiff testified that on the day of or two days before the fire he saw sparks coming from the locomotive as big as his hand or fist and that these sparks did set fire to some logs which he and a negro put out.

Plaintiff says he complained about the danger from the engine to Mr. Green, the secretary and treasurer of the defendant company, on the day he went to Alabama or Georgia, and that Green said he would see about it. He also says that the day after that he complained to the negro running defendant's log train who replied that they could not keep up steam if it was screened. He further testified that on the very day of the fire and after it had occurred but before he learned of it he went to Bernice and complained to Mr. Wacker, whom he found in Green's place, and he replied that he would see after it and have the engine screened and that he called a young man in the office and told him to see that it was screened and to put something on there to keep the fire from falling out.

The testimony as to complaints to Wacker and the negro were not contradicted at all. As to the complaint to Green, Green testifies:

"Q. Do you remember talking with Mr. Davis and agreeing with him that you would have this engine equipped with spark arrestors?
"A. Why should I, when it was already equipped.
"Q. Do you deny having this conversation with Mr. Davis?
"A. About this particular engine, I do.
"Q. The engine that he spoke of?
"A. That is the engine I deny."

Plaintiff knew nothing of how the fire causing the damage did originate.

Clarence Pylant testified, that he heard defendant's log train pass thirty or forty minutes before he got to the fire which was then burning from the track towards the mill site which was part of the property destroyed, having reached about sixty yards from the track, and that the ties of the track were burning on one side but not on the other.

He further testified that this was the only fire in the woods anywhere around there that he could see.

Jim Pylant corroborated the testimony of Clarence as to the fire burning from the railroad track back towards the mill; he having arrived on the scene after the fire had gotten two or three hundred yards from the track.

It is not disputed that defendant had one or more men employed to walk the track and put out fires, though the testimony is conflicting as to the fires so guarded against; some of the witnesses stating that they were fires caused by the engine and some that they were fires caused otherwise, there being at that time a drouth and frequent forest fires caused otherwise than by the engine.

A. Mizell, defendant's engineer, testified that the only engine used in July, 1924, was a Heisler engine, equipped with a "cabbage head" spark arrestor which did not permit ejection of sparks bigger than his finger.

W. O. McCurdy, who had been until June 1, 1924, inspector of locomotives of the State Department of Conservation, testified that he had inspected defendant's engine between the 25th and 30th of April, 1924; that it was equipped with a "cabbage head" spark arresting device; and

that this was the latest and most approved spark arrestor known.

There is also testimony showing that fires were frequent at that time.

On this evidence we agree with the district judge that the proof sufficiently shows that the fire was caused by sparks from defendant's engine, and that it was negligence, making defendant liable for the ensuing injury to plaintiff's property.

## AMOUNT OF DAMAGES

Plaintiff itemized his damages as follows:

| | |
|---|---|
| For small pine and hardwood trees | $1000.00 |
| For dry pine or kindling wood | 200.00 |
| For 30,000 feet of lumber in the planer mill shed and two tramways | 600.00 |
| For 10,000 feet of stacked lumber | 200.00 |
| TOTAL | $2000.00 |

As a witness he says the claim for stacked lumber was a mistake, there being none stacked.

He estimates the value of the trees, dry pine and lumber in the buildings and tramways at the figures above given.

Defendant's witnesses estimated the values much lower.

As to the trees, the evidence does not show how much of the 280-acre tract belonging to plaintiff was burned over. Some of the questions would indicate that plaintiff claimed that all of it was, that is, all except 20 or 30 acres of cleared land; but we do not find that any witness states that it was all burned over.

J. A. Poole, a witness for defendant, testifies:

"The part of Mr. Davis' land that I looked over that was cut by the Louisell Pine & Hardwood Co., the majority of it or half of it or better was old field pine and there was part of forty acres south of the old mill on the south side of the railroad that was in the swamp and the majority of the forty that was in Bob Mitchem's pasture was in the woods; the rest of it was old field pine, and as to the timber burned upon it I couldn't say I could figure any damage at all to it."

"Q. How long have you been in the timber business?

"A. Twenty-five years.

"Q. He has a demand of $1000.00 for standing timber injured by this fire; what damage would you say was done on the timber that you saw?

"A. I would say $100.00 would cover everything from the size of your wrist up to four inches through or eight inches through.

"Q. Were you over that property in July?

"A. Yes, sir"

Defendant claims that the timber did not belong to plaintiff who, it appears, on March 2, 1920, contracted to sell it for $3.00 per thousand, to J. T. Cole who paid him $500.00 on account of the price.

On August 1, 1920, Cole executed a deed to J. W. Stancil covering the timber, but the oral testimony shows that Cole and Stancil formed a partnership for the purpose of operating a mill.

On April 1, 1923, Davis sold the timber to Bernice Lumber Co. for $2350.

Bernice Lumber Co. in some way not shown by the record having acquired the rights of Cole and Stancil under the timber contract given to Cole by plaintiff.

These deeds, however, only cover the merchantable timber, and we do not understand that the smaller timber, for which plaintiff claims, was covered by them.

As to the small timber destroyed, therefore, we think plaintiff had a right to recover whatever the damage was.

As to the lumber in the planer mill shed and tramway the testimony shows that it

was old and inferior when used and had little value at the time it was destroyed. Some witnesses placed its value as low as $50.00 and some of them at $100.00 or more.

Defendant's counsel claims that the lumber in these buildings did not belong to Davis. They were constructed by Cole and Stancil. Davis and Cole both testify that Cole stated, when he acquired the option from plaintiff, that plaintiff could have the buildings when he got through with the mill site. Before cutting the timber, though, it seems that Cole sold out his rights to Stancil who sold to Bernice Lumber Co. Bernice Lumber Co. in this purchase was represented by G. W. James. Plaintiff and his son say that James stated at the time of making the purchase that the buildings belonged to plaintiff and requested the use of them until he was through cutting the timber. James testified that he said he did not admit that plaintiff owned the houses, but he did tell him that when he got through he could have anything that was left. He says he thinks Mr. Davis is practically right about the matter, though he did not ask him for the use of the buildings as he figured they were his. He further states that in buying from Stancil he did not figure that the buildings had any value and that the $1800 he paid Stancil was the value of the timber rights.

The proof further shows that the mill operations had ceased and practically all of the timber had been cut by Bernice Lumber Company.

We got the impression that all of it was supposed to have been cut though by resurvey it appeared that there was still some timber that the Bernice Lumber Company cut after the fire in question.

Plaintiff testifies that besides the growing young timber and the buildings and tramway a lot of dry pine or kindling on the ground was burned.

On the whole we cannot say that the district judge erred in fixing the damages at $300.00.

For these reasons, the judgment of the lower court is affirmed.